**NO. 24-1058**

---

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

---

HUSSEIN NAJI, as Personal Representative of the Estate of ALI NAJI,
Plaintiff-Appellant,

-v-

CITY OF DEARBORN., et al.,
Defendants-Appellees,

---

**On Appeal from the United States District Court for the
Eastern District of Michigan
Southern Division
Case No. 23-10521**

---

**BRIEF OF PLAINTIFF-APPELLANT HUSSEIN NAJI**

---

Amir I. Makled (P76306)
HALL MAKLED, P.C.
23950 Princeton St.
Dearborn, MI 48124
(313) 788-8888
amakled@hallmakled.com

*Attorneys for Plaintiff-Appellant
Hussein Naji*

i

**ORAL ARGUEST REQUESTED**

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST</u>

Plaintiff/Appellant makes the following disclosure:

1. Said party is not a subsidiary or affiliate of a publicly owned corporation.

2. Said party is not aware of a publicly owned corporation, that is a party to the appeal and therefore believes that no publicly owned corporation has a financial interest in the outcome.

Dated: April 8, 2024                    Respectfully Submitted,

                                        /s/Amir Makled
                                        Hall Makled, PC
                                        Attorneys for Plaintiff/Appellant
                                        23950 Princeton St
                                        Dearborn, MI 48124
                                        313-788-8888

## Table of Contents

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...........................................1

STATEMENT OF JURISDICTION...................................................................1

STATEMENT OF ISSUES ............................................................................2

STATEMENT OF THE CASE.........................................................................2

STATEMENT OF FACTS .............................................................................3

SUMMARY OF THE ARGUMENT ...................................................................10

STANDARD OF REVIEW ............................................................................11

ARGUMENT .........................................................................................12

**I.    THE DISTRICT COURT ERRED IN GRANTING QUALIFIED IMMUNITY TO APPELLEES ON THE APPELLANT'S CLAIM OF EXCESSIVE FORCE BECAUSE MATERIAL FACTS ARE IN DISPUTE. 12**

**A.   *Graham* Standard and Application to Mentally Ill Individuals** ..........14

**B.   Clive's Conduct Was Objectively Unreasonable And Violated Naji's Fourth Amendment Rights.** ..........................................................16

**C.   The District Court Failed To Assess Naji's Actions In Light Of His Mental Illness.** .................................................................................20

**D.   The District Court Erred In Not Considering The Second Prong Of The Qualified Immunity Test -- Whether Clive's Actions Were Contrary To Clearly Established Law At The Time He Acted.**..................................21

**E.   The District Court Erred in Finding that the Officers Had No Clearly Established Duty Under the Circumstances to Use De-Escalation Tactics Before Using Physical Force.** ........................................................22

**II.  The District Court Erred in Finding No *Monell* Liability Against the Appellees.** ....................................................................................25

**III. Clive's Conduct Invalidates Qualified Immunity for Assault and Battery Absent Good Faith.** ................................................................28

**IV. The District Court Erred In Denying Gross Negligence Claim Finding It "Fully Premised" On The Appellants' Assault And Battery Claims.** ..........31

CONCLUSION..................................................................................................34

CERTIFICATE OF COMPLIANCE..................................................................35

CERTIFICATE OF SERVICE .............................................................................36

ADDENDUM…………………………………..………………………………37

## Table of Authorities

**Cases** .................................................................................................. **Page No.**

*Alexander v. City & Cty. of S.F.*, 29 F.3d 1355 (9th Cir. 1994) ..............................14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...........................................12

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .............................................................13

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) ...............................................28

*Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011) ......................................................31

*Bordanaro v. McLeod*, 871 F.2d 1151 (1st Cir. 1989) ...........................................26

*Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656 (6th Cir. 2018)............32

*Brown v. Lewis*, 779 F.3d 401(6th Cir. 2015)........................................................29

*Browning v. Edmonson Cty.*, 18 F.4th 516 (6th Cir. 2021) ....................................22

*Burnett v. Griffith*, 33 F.4th 907 (6th Cir. 2022) ...................................................21

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004).......................14

*City of Canton v Harris*, 489 U.S. 378 (1989)......................................................25

*Coble v. City of White House*, 634 F.3d 865 (6th Cir. 2011)...................................11

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001)............................................23

*Eldridge v. City of Warren*, 533 F. App'x 529 (6th Cir. 2013)...............................20

*Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015) ......................... 14, 20

*Graham v. Connor*, 490 U.S. 386 (1989) ..............................................................14

*Green v. Throckmorton*, 681 F.3d 853 (6th Cir. 2012)...........................................11

*Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012)................20

*Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521 (6th Cir. 2018)....................11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..........................................................16

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606 (6th Cir. 2009) ......................11

*Hensley v. Price*, 876 F.3d 573 (4th Cir. 2017)......................................................19

*Hicks v. Scott*, 958 F.3d 421, 435-36 (6th Cir. 2020)................................................7

*Landis v. Baker*, 297 F. App'x 453 (6th Cir. 2008) ...............................................22

*Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241 (6th Cir. 1989)..................................27

*Lopez v. City of Cleveland*, 625 F. App'x 742, 743 (6th Cir. 2015)..........................7

*Malory v. Whiting*, 489 F. App'x 78 (6th Cir. 2012)..............................................29

*Martin v. City of Broadview Heights*, 712 F.3d 951 (6th Cir. 2013).......................20

*Mazur v. Young*, 507 F.3d 1013 (6th Cir. 2007).....................................................11

*Odom v. Wayne Cty.*, 482 Mich. 459, 760 N.W.2d 217 (2008) ...................... 28, 29

*Ouza v. City of Dearborn Heights*, 969 F.3d 265 (6th Cir. 2020).............. 12, 13, 25

*Pearson v. Callahan*, 555 U.S. 223 (2009).................................................21

*Richards v. Peters*, 788 F. App'x 324 (6th Cir. 2019)...............................32

*Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307 (2000) ...................32

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................11

*Shumate v. City of Adrian*, 44 F.4th 427 (6th Cir. 2022)................................... 22, 28

*Sigley v. City of Parma Heights*, 437 F.3d 527 (6th Cir. 2006) .............................11

*Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005)............................................23

*Tennessee v. Garner*, 471 U.S. 1 (1985)...............................................21

*Wells v. City of Dearborn Heights*, 538 F. App'x 631 (6th Cir. 2013)....................32

*Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452 (6th Cir. 2022)..............13

## Statutes

1343(a)(4)....................................................................................1

28 U.S.C. § 1291 ...........................................................................1

28 U.S.C. § 1331 ...........................................................................1

28 U.S.C. §§ 1343(a)(3)..................................................................1

42 U.S.C. § 1983 ...................................................................... 1, 2, 5

Fed. R. App. P. 4(a)(1)(A) ..............................................................1

Mich. Comp. Laws. § 691.1407(7)(a) ...............................................32

## Other Authorities

Dearborn Police Department General Order ................................................. 23, 25

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

The goal of maintaining a proper legal balance between a defendant municipality, its citizens, and the court is of paramount importance to the unified existence of the U.S.A.  The role of each is at issue in this appeal and deserves the enhanced clarity provided through oral argument.  Accordingly, the Appellant requests oral argument.

**STATEMENT OF JURISDICTION**

The  United States District Court for the Eastern District of Michigan (the "District Court") had jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in that Court of all suits brought pursuant to 42 U.S.C. § 1983. The District Court also had jurisdiction pursuant to 28 U.S.C. § 1331 because the cause of action arose under the Constitution and laws of the United States. This Court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 as an appeal from a final decision of the District Court. This appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A) in that the Notice of Appeal was filed with the District Court clerk on January 23, 2024 less than 30 days after the entry of the Judgment appealed from on December 29, 2023. This appeal is from a final judgment that disposed of all claims against all parties in the underlying action.

1

## STATEMENT OF ISSUES

1. Whether the District Court erred in granting summary judgment on the Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983 against the Defendants?

2. Whether there was a question of fact as to qualified immunity, especially when Defendant Cpl. Timothy Clive failed to adhere to proper procedures in handling similar incidents by completing the Use of Force form?

3. Whether the District Court erred in finding no Monell liability against the Defendants?

4. Whether the District Court erred in granting summary judgment on the Plaintiff's state law claim for assault and battery against Defendant Cpl. Timothy Clive for his use of deadly force based on his alleged immunity from liability under Michigan law?

5. Whether the District Court erred in denying the gross negligence claim against the Defendants reasoning it to be rooted in the same facts as the excessive force and assault and battery claims?

## STATEMENT OF THE CASE

The appeal seeks to overturn the Opinion and Order of the District Court granting summary judgment to Defendants-Appellees Cpl. Timothy Clive ("Clive")

2

and the City of Dearborn (the "City" and collectively referred to as "Appellees") by dismissing the Complaint of Plaintiff-Appellant Hussein Naji, as Personal Representative of the Estate of Ali Naji ("Appellant").

The lawsuit arises from the tragic death of Ali Naji ("Naji") during a shooting incident on December 18, 2022. Naji fell victim to the unlawful use of deadly force by Clive, a Dearborn Police Officer. Clive fatally shot Naji on December 18, 2022. Despite suffering from mental illness, which Defendants were aware of, Clive used deadly force against Naji without just cause, resulting in Naji sustaining seventeen gunshot wounds and ultimately leading to his death.

The Appellant timely filed a Notice of Appeal on February 13, 2024. (See, Notice of Appeal). In this appeal, the Appellant is challenging the District Court's grant of summary judgment to Appellees, because genuine disputes exist regarding material facts on Naji's wrongful death and civil rights claims. The District Court erred in granting summary judgment as there are genuine issues of material fact regarding the excessive use of force, deliberate indifference to Naji's rights, and failure to train Clive, which directly resulted in Naji's death.

## STATEMENT OF FACTS

### A. Background

This civil rights case stems from the tragic shooting incident on December 18, 2022, in the lobby of the City of Dearborn Police Headquarters. On December 18,

2022, Clive shot Naji to death while he was inside the Dearborn Police Station, County of Wayne. Am. Compl. ¶ 7. Naji had received treatment for mental illness which Appellees were aware of and the same was evident on December 18, 2022. Am. Compl. ¶¶ 16, 18. Yet, Clive, while acting in his capacity as a Dearborn Police Officer, fired multiple bullets into Naji's body without just cause. Am. Compl. ¶ 17. According to the Medical Examiner's Summary and Opinion, there were seventeen (17) gunshot wounds on Naji's body: head, chest, abdomen, left arm, penis, right leg, and left leg. See Medical Examiner's Report, p. 3. Clive posed a deadly threat to Naji's physical safety without a cause known to him as to why Clive deemed it appropriate to riddle Naji's body with multiple bullets while sitting behind a bulletproof glass window. Am. Compl. ¶¶ 21, 22. As a result of the unnecessary and unlawful use of deadly force, Naji sustained multiple gunshot wounds which led to his death. Am. Compl. ¶ 23.

The Wayne County Medical Examiner, on December 19, 2022, confirmed Naji's cause of death as a "homicide," noting that he sustained multiple gunshot wounds to his persons. Am. Compl. ¶ 24. The City, however, did not take any corrective action against Clive's inappropriate tactics and excessive use of force and it failed to train Clive on the same. Am. Compl. ¶ 25. The City further wrongfully withheld information from Appellant subject to this incident despite several FOIA

4

requests. Am. Compl. ¶ 26. As a direct and proximate result of the Appellees' actions, the Appellant suffered injuries and damages. Am. Compl. ¶ 27.

On March 3, 2023, the Appellant filed the original civil rights lawsuit against the Appellees. The Appellees filed their Answer on March 29, 2023. Thereafter, on May 8, 2023, the Appellant filed the First Amended Complaint asserting 1) violation of 42 U.S.C. § 1983 and Fourth Amendment Excessive Force; 2) *Monell* Liability against the City; 3) Assault and Battery under Michigan law; and 4) Gross Negligence under Michigan law. The Appellees filed their Amended Answer on May 22, 2023, and Clive was deposed on May 31, 2023. On June 26, 2023, the Appellees filed their Motion for Summary Judgment before the District Court.

**B. Appellees' Motion for Summary Judgment and Appellant's Response**

Appellees based their Motion for Summary Judgment on qualified immunity asserting that Clive did not violate Naji's Fourth Amendment rights and that the Fourth Amendment right that the Appellant alleges was not established at the time of the shooting. Appellees further asserted that absent any underlying Fourth Amendment violation of Naji the *Monell* claim should be dismissed. Appellees further sought immunity for the state law claims, assault and battery, and gross negligence, asserting that Michigan law does not permit civil litigants to transmute intentional acts.

Appellees' arguments centered on the fact that Clive's conduct was objectively reasonable, thereby, there was no violation of Naji's Fourth Amendment rights entitling him to qualified immunity. Appellees' main focus was that the Appellant did not establish an underlying constitutional violation for showing Appellees *Monell* liability. The District Court failed to note that Clive did not adhere to proper procedures in handling similar incidents even after his failure to complete the Use of Force form in Naji's case.

The Appellant's response to the Appellees' Motion for Summary Judgment stated that there existed genuine issues of material fact related to Clive's actions that violated Naji's Fourth Amendment right, *Monell* claim, state law claim for assault and battery, and gross negligence. The Appellant's claim for damages was based on the Appellees' conduct of using excessive force against Naji, a mentally ill person. The Appellant mainly asserted that Clive is not entitled to qualified immunity because he violated Naji's Constitutional right by using excessive force in the form of multiple gunshots causing his death when he knew that Naji was a mentally ill person and Naji's actions were not a threat to him as he was inside a bulletproof chamber and Naji had a malfunctioning gun.

## C. The Opinion and Order Granting Appellees' Motion

The District Court granted Appellees' Motion for Summary Judgment based on qualified immunity finding that "the seriousness of the crime factor weighs

strongly in favor of finding that the use of deadly force was not excessive." Order Granting Summary Judgment, RE 21, Page ID # 338. The court heavily relied on the video evidence showing that "Naji pointed his firearm at Clive . . . but it malfunctioned, and then attempted to correct the gun's malfunction[.]" Order Granting Summary Judgment, RE 21, Page ID # 340. The District Court reasoned that "had Clive retreated, he would have left an armed man who appeared willing to use his firearm alone in the police station lobby where members of the public, other officers, and staff could enter at any moment."  However, the District Court failed to  consider  the fact that Clive understood before firing Naji that Naji possessed a malfunctioning gun, which will not or could never be a threat to anyone at the lobby. The District Court supported its conclusion by *Hicks v. Scott*, 958 F.3d 421, 435-36 (6th Cir. 2020) where the Sixth Circuit held that the "only inquiry that matters is whether, in the 'moment' before using deadly force, an officer reasonably perceived an immediate threat to [his] safety." *Id*. at 437. Applying *Hicks*, the District Court found that "warning" was not feasible given the perceived threat posed by Naji, which is inappropriate in Naji's case especially because nothing under the circumstance warranted Clive's action to fatally shoot him without a warning.

The District Court distinguished *Lopez v. City of Cleveland*, 625 F. App'x 742, 743 (6th Cir. 2015) from this case solely because it did not involve video evidence and ruled "in the light depicted by the videotape" that Naji "'did not give

7

the officers probable cause to believe that he posed a serious threat of harm' such that a genuine issue of fact has been created." Order Granting Summary Judgment, RE 21, Page ID # 345. While deciding on excessive force claim the District Court also "emphasizes the importance of Clive's actions to protect the public," while the video evidence shows that there was no person present in the vicinity or lobby when Naji arrived at the police station. The District Court further erred in ruling that it "need not consider the second prong of the qualified immunity test – whether Clive's actions were contrary to clearly established law at the time he acted." Order Granting Summary Judgment, RE 21, Page ID # 346.

The District Court denied *Monell* claim against the Appellees because it found no underlying constitutional violation. Likewise, the District Court denied the assault and battery claim against the Appellees because it found "the force used by Clive was reasonable as a matter of law." Order Granting Summary Judgment, RE 21, Page ID # 349. The District Court denied the gross negligence claim finding that the Appellant failed to "support a separate claim of gross negligence under Michigan law because they were "fully premised" on his intentional tort claims." Order Granting Summary Judgment, RE 21, Page ID # 350. The District Court found that the Appellant abandoned the ADA and FOIA claims by failing to address them. Additionally, the District Court further denied the Appellees' Rule 11 Sanctions finding the Appellees "did not comply with the safe harbor procedure for requesting

sanctions under Rule 11 and it also improperly included its request for sanctions as part of its motion for summary judgment[.]" Order Granting Summary Judgment, RE 21, Page ID 352.

Nevertheless, while ruling on the Appellees' Motion for Summary Judgment, the District Court, however, did not consider the mental state or illness of Naji while evaluating whether a particular application of force was reasonable, especially in the circumstance of a case involving a mentally ill person possessing a malfunctioned gun without any persons around.

i.   Disputed Material Facts That Present Genuine Issues For Trial

1. Whether Clive acted "reasonably" when he fired multiple bullets at Naji.

2. Whether or not, under the totality of the circumstances of this case, the use of deadly force by Clive was "necessary".

3. Whether or not the policies of the City constitute unconstitutional municipal policy.

4. Whether there was a safer way, given the time, place, and circumstances, to stop or get control over Naji.

5. Whether a jury could conclude that the actions of the police officers were not a reasonable response to any threat.

9

## SUMMARY OF THE ARGUMENT

Appellees are not entitled to qualified immunity at the summary judgment stage of litigation because material facts are in dispute. On the facts here, it is plausible for a jury to find that Naji's constitutional rights were violated when Clive fatally shot him, especially given Naji's mental health condition, Clive's awareness that Naji only had a malfunctioning firearm, and the absence of any public at the scene. The right to be free from the use of such gratuitous force was established at the time of the subject incident. Taking the facts in a light most favorable to Naji, the Appellant has presented sufficient evidence to show that Clive violated Naji's constitutional right to be free from excessive force.

Furthermore, the City caused this constitutional violation by maintaining an unconstitutional policy, systematically failing to train its officers, and ratifying their unconstitutional actions. Despite evidence that Naji was not aggressive, the court incorrectly found that it was reasonable for the officers to believe that Naji was a threat without even deserving a warning to put his gun down. The district court also found that Naji was actively resisting, failing to take into consideration his mental state. Furthermore, the court held incorrectly that the officers had no clearly established duty to attempt de-escalation before using force. The Court also failed to determine the quantum of force used in such incidents, i.e., whether multiple gunshots are warranted. Viewing the facts of this case in a light most favorable to

10

Naji as must be done in a summary judgment analysis, a reasonable jury could find that the officers' use of force against Naji was unreasonable under the circumstances. As shown below, there are sufficient material facts in dispute that preclude  granting of summary judgment to Appellees.

## STANDARD OF REVIEW

Appellate courts review a district court's grant of summary judgment de novo, applying the same summary judgment standard as the district court. *Sigley v. City of Parma Heights*, 437 F.3d 527, 532 (6th Cir. 2006). Summary judgment is appropriate only when the evidence, "'taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.'" *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (quoting *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007)).

"But where, as here, there is 'a videotape capturing the events in question,' the court must 'view[] the facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)). "However, where the video does not tell the whole story in a material respect, or 'reasonable jurors could interpret the video evidence differently,' summary judgment is not appropriate." *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018) (quoting *Green v. Throckmorton*, 681 F.3d 853, 865

(6th Cir. 2012)). "Moreover, '[e]ven if part of [a party]'s testimony is blatantly contradicted by [an] audio [or video] recording, that does not permit the district court to discredit his entire version of the events.'" *Id*. (quoting *Coble v. City of White House*, 634 F.3d 865, 870 (6th Cir. 2011)). Rather, "[a] recording must blatantly contradict a party's '*entire* version of the events' in material respects to each claim." *Id*. (original emphasis).

Thus, "it is clear enough . . . that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986)). "The ultimate question, then, is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [the moving] party must prevail as a matter of law.'" *Id*. (quoting *Anderson*, 477 U.S. at 251-52).

## ARGUMENT

**I. THE DISTRICT COURT ERRED IN GRANTING QUALIFIED IMMUNITY TO APPELLEES ON THE APPELLANT'S CLAIM OF EXCESSIVE FORCE BECAUSE MATERIAL FACTS ARE IN DISPUTE.**

It is settled that "[q]ualified immunity is not absolute immunity, and [] case law establishes that individuals must have some right to sue government officials who knowingly or unreasonably violate their constitutional rights." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 283 (6th Cir. 2020).

12

"To overcome a defendant's qualified-immunity defense, a plaintiff must plausibly allege facts, and ultimately prove, '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 465 (6th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 731 (2011)). "[A] right is clearly established for purposes of overcoming the qualified immunity defense when existing precedent has placed the statutory or constitutional question beyond debate." *Ouza*, 969 F.3d at 279 (internal quotation marks and citation omitted).

Applying the two-step qualified immunity analysis to the Appellant's claim of excessive force, the district court in this case, made improper findings of fact and ignored the Sixth Circuit' settled precedents on the use of force against mentally ill individuals. In this case, there is more than sufficient evidence to create material issues of fact as to whether Naji was a serious threat and whether he was actively resisting. Here, Clive fired his taser multiple times at Naji without any warning, where Naji may have already been successfully restrained. Specifically, the use of multiple gunshots leading to Naji's death increases the gravity of excessive force.

The Appellant disagrees sharply with nearly all the underlying facts that are relevant to determining whether a grant of qualified immunity is justified. The Appellant does not agree that Naji, who had not committed any crime, posed a threat

13

to the officers or the public; or whether Naji continued to resist arrest or tried to flee from the scene at the time of being tased.

### A. *Graham* Standard and Application to Mentally Ill Individuals

To comply with the Fourth Amendment, any use of force by police must be "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). Any inquiry into a violation of the Fourth Amendment "'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

In *Graham*, the Supreme Court identified several factors to assist the trier of fact in assessing whether the force used was reasonable under the circumstances: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. However, the factors listed in *Graham* are not an exhaustive list of relevant considerations. This Court and other federal circuit courts have clarified that a suspect's mental state is among the factors that must be considered in evaluating whether a particular application of force is

14

reasonable. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 904 (6th Cir. 2004) See *Alexander v. City & Cty. of S.F.*, 29 F.3d 1355, 1366 (9th Cir. 1994) (holding that the police used excessive force, considering all the circumstances, in "storm[ing] the house of a man whom they knew to be a mentally ill . . . recluse who had threatened to shoot anybody who entered").

Here, Naji had a history of mental illness, and a question of fact exists as to whether Naji experienced a mental health episode on the day in question. On one such occasion, Naji also received police help for transferring him to a local hospital for mental health treatment. (Am. Compl. ¶ 68). Thus, there is every possibility for the Dearborn police to know Naji and his mental health. As contended by the Appellees, even if Naji was unrecognizable by wearing a mask, Naji's actions at the police station with a malfunctioned gun without any provocation should give a reasonable inference to experienced officers about his state of mind. The entire incident transpired within a remarkably short timeframe of five to six seconds – without an attempt for de-escalation, warning, or motive for multiple gunshots. Transcript of MSJ Hearing, RE 26, Page ID # 376.

On that day, the Appellees should have approached the situation with Naji bearing his mental illness in mind, given his history and previous interactions with law enforcement for mental health-related issues. The Appellees, however, did not consider using "less-than-lethal alternatives" to handle Naji. Thus, Appellant has

15

presented sufficient evidence to create a genuine issue of material fact concerning whether the conduct of the Appellees was objectively unreasonable. The district court made improper findings of fact concerning each of the *Graham* factors and did not consider Naji's mental illness in evaluating whether Clive's use of force was reasonable under the circumstances.

**B. Clive's Conduct Was Objectively Unreasonable And Violated Naji's Fourth Amendment Rights.**

Under federal law, a claim of excessive force under the Fourth Amendment is governed by the reasonable force standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). "[T]he 'reasonableness' inquiry is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. So, qualified immunity is inappropriate on an excessive force claim where an officer's use of force was objectively unreasonable, which turns on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest[.]" *Id*. at 396. At the summary judgment stage, qualified immunity does not apply if the facts, when viewed in the light most favorable to the plaintiff, would allow a reasonable juror to find that (1) an officer's conduct violated a plaintiff's constitutional rights, and (2) the right was clearly established and one of

16

which a reasonable officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

The videotape evidence shows that Clive shot Naji to death. No visual or footage shows Naji as a threat to Clive or anyone else. The video evidence shows only a five to six-second gap between Clive's observation of Naji and the firearm before Clive discharged fire on Naji. (Clive Dep. 88:15-18). The videotape clearly shows that Clive was safe behind the bulletproof glass window, and he slipped open the window when Naji was not even looking straight. Thereafter, without any provocation from Naji or reason to control him, Clive fired Naji to death with several gunshots. At that time, Clive could have either attempted to de-escalate or warned Naji to put his gun down. But Clive did nothing. Rather, it is clear from the videotape that Clive escalated to deadly force extremely quickly when he discharged the gunshots "seventeen times in span of four seconds." (Clive Dep. 64:25; 65:1-5). Moreover, during this incident, there was no person present in the vicinity and Naji was not even looking at Clive – thus, there was no imminent threat to the safety of Clive or others. However, the District Court improperly found it reasonable – like in any other circumstance of a similar incident - for an officer present at the scene to perceive Naji's actions as an ongoing threat without any reason. If such is the case, without a duty to safeguard a citizen's Fourth Amendment rights or constitutional

17

protection, a police officer can use excessive force on a person who unreasonably enters a police station perceiving that he is a threat to others.

i. The District Court Made An Improper Finding Of Fact When It Concluded That Naji Posed An Immediate Threat Of Harm.

The District Court's decision was heavily influenced by its finding that "an officer on the scene in those circumstances to perceive Naji's movements as a continuing threat." Order Granting Summary Judgment, RE 21, Page ID 343. The conclusion that Naji posed a threat, as well as the assertion that the officers reasonably believed this, was an improper determination of fact, especially when the use of excessive force is not always warranted under the Constitution. Likewise, the District Court's conclusion that Naji attempted to discharge the weapon is an improper finding of fact because the evidence is clear that Naji was not pointing the gun at Clive or any other person while Clive shot him because Naji was trying to fix the gun. Although the Appellees claim that they felt threatened by Naji when he pointed his firearm at Clive, a jury could reasonably find that these claims are not objectively reasonable as established above. The issue under *Graham* is whether the "suspect poses an immediate threat to the safety of the officers or others." *Graham*, 490 U.S. at 396.

In this case, the evidence suggests that Clive had ample time to deliberate and reevaluate the necessity of employing force. After Naji brandished his firearm at 3:32:49, Clive was shielded behind bullet-resistant glass and faced no immediate

18

risk to himself or others.[1] Approximately six seconds later, at 3:32:57, Clive chose to open fire on Naji after sliding open the glass window. If Clive suspected imminent harm, he would not have slid open the glass window. This shows that Clive's decision to use force was not in response to imminent bodily harm. Furthermore, even after Naji was unable to use his gun while lying on the floor, Clive continued to shoot, indicating a failure to de-escalate the situation. Such a situation clearly did not call for multiple gunshots, especially since Naji was already on the floor. Therefore, Clive had multiple opportunities to de-escalate given the absence of immediate harm to himself, fellow officers, or the public.

Moreover, Clive does not recall when he saw the last civilian in the police station before Naji's arrival. [Exhibits to MSJ, RE 15-1, Pg. ID 195]. Coupled with the fact that Naji never fired a bullet at Clive [Exhibits to MSJ, RE 15-1, Pg. ID 190], and that Clive slipped open the bullet-resistant glass window to engage Naji directly, there is a question of fact as to whether Naji posed "an *immediate threat* to the safety of the officers or others." *Graham*, 490 U.S. at 396. Further, Naji did not try to flee when he was shot, rather he was trying to fix his gun that was not working. *Hensley v. Price*, 876 F.3d 573 (4th Cir. 2017) (denying summary judgment in a shooting where the deceased held a gun in his hand as he walked toward the officers).

---

[1] Dearborn Chief of Police Issa Chahin has stated that the glass was bullet resistant. WDIV News, Dearborn Police Footage Shows Moment Man was Killed by Officer After Drawing Gun Inside Station, available at: https://www.clickondetroit.com/news/local/2023/03/16/footage-shows-moment-man-was-killed-by-dearborn-officer-after-drawing-gun-in-police-station/.

The Appellant has presented sufficient evidence from which a jury could find that Naji did not pose an immediate threat to the officers or anyone else.

Thus, Clive's conduct was objectively unreasonable and violated Naji's Fourth Amendment rights.

**C. The District Court Failed To Assess Naji's Actions In Light Of His Mental Illness.**

The third *Graham* factor requires the Court to consider whether Naji was actively resisting arrest or evading arrest by flight. The law has long distinguished between force used on individuals who demonstrate active resistance in the form of "verbal hostility" or "a deliberate act of defiance," and force used against subjects who passively resist by merely refusing to comply with a command. *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013). "Active resistance to an officer's command can legitimize an officer's use of a Taser." *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) (citing *Hagans v. Franklin Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)). Although active resistance is more likely to justify the use of non-lethal force, any resistance must be considered in light of the suspect's mental state. *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013). This Court has clarified that active resistance suggests "conscious defiance," which is absent where the subject's mental state prevents them from complying. *Eldridge*, 533 Fed.Appx. at 534-35.

20

Here, whether Naji was actively resisting the officers is a fact question that should be decided by a jury. The videotape does not show Naji actively resisting the officers. Indeed, Clive did not command Naji to de-escalate the situation before resorting to lethal force; instead, he directly shot Naji to death. Absent any command from Clive, the question of Naji's active resistance is baseless. Thus, a jury could easily find that there was no "volitional and conscious defiance" on Naji's part and therefore there was no justification for Clive's use of lethal force against Naji.

### D. The District Court Erred In Not Considering The Second Prong Of The Qualified Immunity Test -- Whether Clive's Actions Were Contrary To Clearly Established Law At The Time He Acted.

"Courts may 'exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Zakora v. Chrisman (In re Est. of Zakora)*, 44 F.4th 452, 465 (6th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The Sixth Circuit has explained that:

> "[E]ven if [the courts] were to conclude that a reasonable jury could find that [the police officer] violated [the suspect's Constitutional] right to be free from the use of excessive force, [the courts] would still need to determine whether the state of the law, at the time of [the police officer's] conduct, was sufficiently clear to a 'reasonable official in the defendant's shoes' that he 'would have understood that he was violating [the right in question].'"

*Burnett v. Griffith*, 33 F.4th 907, 911-12 (6th Cir. 2022).

21

"'A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Zakora*, 44 F.4th at 465 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Notably, the law regarding the use of deadly force was clearly established before December 18, 2022, by *Tennessee v. Garner*, 471 U.S. 1 (1985). See also *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004) ("the right to be free from excessive force is a clearly established Fourth Amendment right").

Here, Clive's actions violated Naji's clearly established right: the right of a suspect to be free from the use of physical force when he is not resisting police efforts to apprehend him. In this case, Naji never had a chance to resist police as Clive directly shot him to death, without any warning – using excessive force. Thus, the District Court's failure to consider the second prong of the qualified immunity analysis constitutes an error, as it is essential to determine whether Clive should have reasonably known that his actions violated Naji's constitutional rights.

## E. The District Court Erred in Finding that the Officers Had No Clearly Established Duty Under the Circumstances to Use De-Escalation Tactics Before Using Physical Force.

"By 2019, . . . the right to be free from physical force when one is not actively resisting the police was clearly established." *Shumate v. City of Adrian*, 44 F.4th 427, 450 (6th Cir. 2022) (citation omitted). "It was also clearly established in this

22

Circuit that an individual has a constitutional right not to be tased when he is not actively resisting." *Id*. (citing *Browning v. Edmonson Cty.*, 18 F.4th 516 (6th Cir. 2021)). "For purposes of determining whether a constitutional right is clearly established, the district court must first look to decisions of the Supreme Court, then decisions of Sixth Circuit and other courts within the circuit, and finally to decisions in other circuits." *Landis v. Baker*, 297 F. App'x 453, 462 (6th Cir. 2008).

In *Smith v. Cupp*, 430 F.3d 766 (6th Cir. 2005) the Court held that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend his [sic] does not justify the use of deadly force to do so." *Id*. See *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (reasonable jury could conclude that officers should have de-escalated encounter with distraught individual through verbal intervention rather than physical force); *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001) (holding that a civilian's mental status must be considered in determining the reasonableness of a use of force, and observing that, for emotionally disturbed persons, "a heightened use of less-than-lethal force will usually be helpful in bringing a dangerous situation to a swift end").

This shows that police officers, including Clive, had a "clearly established duty" to use de-escalation techniques before using lethal force against Naji.

23

Moreover, the Dearborn Police Department General Order and Policy limit the Authorization for Deadly Force in circumstances that include:

> Against a subject that poses an *imminent threat* of death or serious bodily injury *to the officer(s) or other(s)*. A subject must have the *apparent ability*, *opportunity*, and intent to cause serious physical harm or death to officers or others. When feasible, officers shall identify themselves and give *a verbal warning* prior to discharging a firearm as an application of deadly force.

Dearborn Police Department General Order, AUTHORIZATION FOR DEADLY FORCE, p. 13. (emphasis added).

Nevertheless, in Naji's case, Clive did not give such verbal warning to Naji, as evident in the videotape. Despite Clive being a trained and experienced officer knowing de-escalation tactics, he did not try any de-escalation tactics before using lethal force on Naji. (Clive Dep. 33:22-24). Here, a factual inquiry exists as to whether Naji experienced a mental health episode on the day in question. Clive had ample opportunity to de-escalate by either utilizing any of the tactics under GO A-1.8, Section IV of the Dearborn Police Manual or at least by a warning shot when he noticed that Naji's gun was not working. (Clive Dep. 76:18-23; 77-15-17). See, *Champion*, 380 F.3d 893 (requiring the officers to de-escalate the situation and adjust the application of force downward). However, Clive ignored Naji's diminished mental state and used excessive force to control him when there was no imminent threat because Naji had a malfunctioning gun and he did not point it to Clive or anyone else.

24

Thus, the District Court erred in finding that Clive had no clearly established duty under the circumstances to use de-escalation tactics before using lethal force against Naji, who posed no imminent threat to Clive or others as established above.

## II. The District Court Erred in Finding No *Monell* Liability Against the Appellees.

The District Court's denial of *Monell* liability against the Appellees finding no violation of Naji's Constitutional rights is mistaken. The District Court did not consider any other factor to find *Monell* liability against the Appellees, rather it determined no liability solely because the court found no constitutional violation – a clear error. In this case, Naji has a viable *Monell* claim against the City for its failure to adequately train and/or supervise its officers, including Clive.

A municipality will be held liable for failing to adequately train its officers when it "evidences a 'deliberate indifference' to the rights of its inhabitants... such a shortcoming [can] be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton v Harris*, 489 U.S. 378, 389 (1989). Further, a plaintiff's *Monell* claim may be based upon an assertion that the fundamental training and supervision were deficient, which was so clearly necessary that the municipality could have readily anticipated that even a single constitutional violation would occur. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287-289 (6th Cir. 2020).

The Dearborn Police Department General Order requires the officers to "give a verbal warning prior to discharging a firearm as an application of deadly force." Dearborn Police Department General Order, AUTHORIZATION FOR DEADLY FORCE, p. 13. In Naji's case, Clive's conduct shows that the City failed to provide adequate fundamental training regarding the use of deadly force on suspects, causing the death of Naji. [Exhibits to MSJ, RE 15-1, Pg. ID 178, mentioning only one day of excessive use of force training last spring in 2022]. Pertinently, Clive seems to not even acknowledge the requirement to provide warning to suspects in similar situations.

Notably, proof of a single incident of an unconstitutional activity may be sufficient to impose liability, but not unless proof of the incident includes evidence that it was caused by an existing, unconstitutional municipal policy. *Okla. City v. Tuttle*, 471 U.S. 808, 841 (1985). While a single incident alone cannot establish a municipal custom or policy, "where other evidence of the policy has been presented and the 'single incident' in question involves the concerted action of a large contingent of individual municipal employees, the event itself provides some proof of the existence of the underlying policy or custom." *Bordanaro v. McLeod*, 871 F.2d 1151, 1157 (1st Cir. 1989).

> A § 1983 cause of action is as available for the first victim of a policy or custom that would foreseeably and avoidably cause an individual to be subjected to deprivation of a constitutional right as it is for the second and subsequent victims; by exposing a municipal defendant to

26

liability on the occurrence of the first incident, it is hoped that future incidents will not occur.

*Okla. City*, 471 U.S. at 832.

The Complaint shows the custom and practice of excessive force followed by the City. Before Naji's incident, the prior incidents of "shooting Kevin Matthews, an unarmed African American male on December 23, 2015" and "Janet Wilson, a 31-year-old African American woman" on January 27, 2016 – show that the City neither properly train and supervise the police officers on the proper use of force nor adequately investigate and disciple such officers for using excessive force. [Amended Complaint, RE 11, Pg. ID 90]. Likewise, the Department requires the officers to fill out the Use of Force Forms when the officer uses force. (Clive Dep. 87:1-7). However, Clive did not fill out this form in Naji's case. (Id. 87:8-12). Usually, a Use of Force form triggers such an investigation but in Clive's case, the Department did an investigation without the Use of Force form. (Id. 89:1-6). See, *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989) (failure to adequately investigate incidents of police misconduct and discipline the responsible parties is sufficient evidence of a policy of deliberate indifference).

Thus, the Appellant raises a valid *Monell* claim because a jury could find that the City engages in a longstanding custom and practice of resorting to excessive force—one that is so "persistent and widespread" that it constitutes a "permanent and well settled" City policy. Here, a reasonable jury could find that the City's

27

practice of using excessive force caused Clive to shoot Naji. Moreover, the evidence in this case reveals that the City had a custom and practice of engaging in unconstitutional behavior, particularly the use of excessive force in violation of the Fourth and Fourteenth Amendments. Clive's use of excessive force against Naji reflects his belief that the City will not take any action against him, given past incidents. Clive's failure to complete the Use of Force form exemplifies his failure to adhere to proper procedures in handling such incidents. When protocols are set up, the City must ensure compliance by all officers -- the constitutional violation alleged by the Appellant. However, the District Court completely failed to consider these factors while ruling on *Monell* liability claim against the Appellees.

### III.   Clive's Conduct Invalidates Qualified Immunity for Assault and Battery Absent Good Faith.

The District Court erroneously granted immunity to Clive, finding the force used by him against Najji to be reasonable and in good faith. "Assault and battery are intentional torts under Michigan law." *Shumate v. City of Adrian*, 44 F.4th 427, 451 (6th Cir. 2022) (citation omitted).

> To qualify for governmental immunity under Michigan state law for intentional torts such as assault and battery, a governmental employee must establish that: (1) the employee undertook the challenged acts during the course of his employment and was acting, or reasonably believed he was acting, within the scope of his authority, (2) the employee undertook the challenged acts in good faith or without malice, and (3) the acts were discretionary, rather than ministerial, in nature.

28

*Binay v. Bettendorf*, 601 F.3d 640, 653 (6th Cir. 2010) (citing *Odom v. Wayne Cty.*, 482 Mich. 459, 461, 760 N.W.2d 217, 218 (2008)).

Thus, "there is no immunity when the governmental employee acts *maliciously* or with a *wanton or reckless disregard of the rights of another.*" *Odom v. Wayne Cty.*, 482 Mich. 459, 474, 760 N.W.2d 217, 225 (2008). "Michigan state law imposes a subjective test for governmental immunity for intentional torts, based on the officials' state of mind, in contrast to the objective test for federal qualified immunity." *Shumate*, 44 F.4th at 451 (quoting *Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015)).

"The question of Defendants' good or bad faith in restraining Plaintiff is 'subjective in nature.' "The good-faith condition 'protects a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent.'" *Malory v. Whiting*, 489 F. App'x 78, 86 (6th Cir. 2012) (quoting *Odom v. Wayne Cty.*, 482 Mich. 459, 482; 760 N.W.2d 217 (2008)). "An officer lacks good faith if he acts with 'malicious intent' or undertakes 'capricious action . . . or willful and corrupt misconduct.'" *Id*. (quoting *Odom*, 482 Mich. at 474. Notably, "[t]he use of force—in the form of multiple Taser shocks, beating or hitting, and arm and leg strikes—could be deemed unreasonable, not undertaken in good faith, and with willful disregard for the possibility of harm." *Shumate*, 44 F.4th at 452 (citing *Brown v. Lewis*, 779 F.3d 401, 421 (6th Cir. 2015)).

29

In this case, there is no dispute that Clive shot Naji to death. Clive's conduct amounts to the use of excessive force on Naji. Clive has the discretion, as a police officer, to use excessive force if the situation calls for it. The relevant question here is whether the force used by Clive was reasonable under the circumstances of this case. The video evidence shows that Clive fired seventeen (17) bullets at Naji between five and six seconds, after finding that Naji's gun was not working. During this shooting incident, Clive was safe behind the glass window, and he shot Naji after opening the glass window when Naji was dealing with his malfunctioned gun. (Clive Dep. 46:18-25; 68:4-7). This shows that Clive knew that if he shot Naji behind the glass, he might not succeed. This underscores Clive's safety behind the glass window. However, Clive shoots Naji continuously on his whole body after opening the glass window. (Clive Dep. 80-13-16). Clive admits that after Naji's gun failed to discharge, he neither required Naji to drop the gun nor tried to de-escalate the circumstance. (Clive Dep. 80:4-9; 80:10-12). Clive's testimony is contradictory regarding when Naji fell to the floor. Although Clive claims he cannot recall the exact moment when Naji fell (Clive Dep. 67:1-5), he also asserts that he witnessed Naji falling and continued to shoot him while he was on the floor until Clive ensured Naji's actions as no longer a threat, resulting in Naji's death. Clive Dep. 97: 1-3; 95:25; 96: 1-21). In this case, Clive asserts that he shot Naji to safeguard his safety

30

and that of others, but it is evident that no imminent threat existed to warrant such action. (Clive Dep. 95: 3-9).

Given that there was no imminent threat, a question of fact arises regarding the necessity of the continued use of force once Clive determined that Naji was dealing with his malfunctioned gun. Clive testified that there was no one at the scene of the occurrence that forced Clive to shoot Naji to save others. Clive shot Naji after opening the glass window when Naji was dealing with his malfunctioned gun. Also, Clive continuously fired seventeen gunshots at Naji after Naji fell on the floor which is clearly not required under the circumstances. Here, Clive will not be able to show that he had a good faith belief that he was acting properly when he used deadly force against Naji. Therefore, Clive did not act in good faith because there are disputed issues regarding the excessiveness of force. Further, being a police officer, Clive acted with malice when he knew that his acts were covered under qualified immunity. He did not even follow the protocols after using excessive force. However, the District Court erred in finding that Clive acted in good faith and without malice while shooting seventeen bullets at Naji. Thus, whether Clive acted in good faith and believed that he needed to shoot Naji to protect himself and others is a question of fact to be decided at trial.

**IV.    The District Court Erred In Denying Gross Negligence Claim Finding It "Fully Premised" On The Appellants' Assault And Battery Claims.**

The District Court failed to consider the broader legal context and misinterpreted the nature of gross negligence claims under Michigan law when it ruled that the Appellant's gross negligence claim is barred by *Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011). Firstly, while *Bletz* establishes that allegations of excessive and intentional force may not independently support a claim of gross negligence under Michigan law, it does not preclude such claims altogether. Instead, it emphasizes the need to differentiate between intentional tort claims and claims of gross negligence. However, this does not mean that gross negligence claims cannot stand on their own if they are based on distinct elements from intentional torts.

"Gross negligence is defined by statute as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 641 (6th Cir. 2013) (quoting Mich. Comp. Laws. § 691.1407(7)(a)). "[The Sixth Circuit] court has sustained gross-negligence claims premised on allegations that officers were 'grossly negligent in failing to follow certain procedures and statutory obligations' or where the plaintiff can otherwise 'show that the defendant owed him a duty of care.'" *Richards v. Peters*, 788 F. App'x 324, 336-37 (6th Cir. 2019) (quoting *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 701 (6th Cir. 2018)). The Michigan Supreme Court has held that a government official can "be deprived of immunity for gross negligence claims if his actions were 'the one most immediate, efficient, and direct

32

cause of the injury or damage.'" *Id*. at 337 (quoting *Robinson v. City of Detroit*, 462 Mich. 439, 462, 613 N.W.2d 307 (2000)).

It is settled that law enforcement officers should follow procedures or statutory obligations of the Police Department, such as the Dearborn Police Department General Order and Policy requiring a verbal warning before the discharge of a firearm signaling the application of lethal force. Nevertheless, Clive did nothing to de-escalate the situation or warn Naji, despite Naji not pointing his gun towards him as his gun malfunctioned. (Clive Dep. 80:10-12). Most importantly, Clive did not ask Naji to drop the weapon. (Id. 80:6-9). Clive also agreed that before he discharges a weapon, he does not make any verbal commands, which is against the Dearborn Police Department General Order. (Id. 81:23-25). Here, the Complaint asserts that the Appellees breached their duty to avoid "wanton, willful, or reckless misconduct; to avoid grossly negligent conduct; and to avoid conduct so reckless as to demonstrate a substantial lack of concern as to whether injury results." (Am. Compl. ¶ 57). This is not fully premised on the assault and battery claims against the Appellees, rather is premised on failure to follow the Dearborn Police Department General Order and Policy. The failure to follow proper policies and procedures is evident from Clive's statement that he never makes any verbal commands. Therefore, the District Court's denial of the gross negligence claim based solely on its association with assault and battery claims is legally flawed and an affront to

33

justice. The law unequivocally supports the viability of gross negligence claims against law enforcement officers, and Defendants must be held to account for their reckless actions. Therefore, the District Court erred in denying Appellant's gross negligence claim.

As set forth above, there are material facts in dispute as to whether or not the use of excessive force on Naji violates his Constitutional rights. Moreover, the District Court's grant of the Appellees' motion for summary judgment is improper as there is a question of fact as to the qualified immunity of Clive even after he fails to adhere to the proper procedures in handling similar incidents.

## CONCLUSION

For the reasons set forth herein, Plaintiff/Appellant requests that this Court allow this appeal by holding that the District Court erred in granting Defendant/Appellees' motion for summary judgment and remand the matter to the trial court and order that it set the case for a jury trial.

Dated: April 8, 2024

Respectfully Submitted,

/s/ Amir Makled, Esq.
Amir I. Makled (P76306)
HALL MAKLED, P.C.
Attorneys for Appellant
23950 Princeton St
Dearborn, MI 48124
(313) 788-8888
amakled@hallmakled.com

34

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), Amir Makled hereby certifies that this brief complies with the type-volume limitation in Rule 32(a)(7)(B) because, as counted by the Microsoft Word word count tool, this brief contains 7,834words, excluding the parts exempted by Rule 32(a)(7)(B)(i). This brief complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this brief has been prepared in proportionally spaced 14-point Times New Roman font.

Dated:  April 11, 2024

/s/Amir Makled

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via this Court's

ECF system to:

AUGUST LAW, PLLC
Gary K. August (P48730)
Michael C. Lewis (P59139)
Counsel for Appellees
29201 Telegraph Rd., Suite 510
Southfield, MI 48034
(248) 833-6225
gaugust@august-law.com
mlewis@august-law.com

On this 11th day of April 2024.

/s/Amir Makled
Counsel for the Appellant

# ADDENDUM

# Designation of Relevant District Court Documents

| Record Number | Document |
| --- | --- |
| 11 | Amended Complaint |
| 15-1 | Exhibits to MSJ |
| 21 | Order Granting Summary Judgment |
| 26 | Transcript of MSJ Hearing |